IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANI LEWIS CONNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA and COMMUNICATIONS WORKERS OF AMERICA | : : : : | No. 13-2464 |

## REPORT AND RECOMMENDATION

Richard A. Lloret                                                                                          November 3, 2014
U.S. Magistrate Judge

      Before me is the Motion to Dismiss of Defendants Association of Flight Attendants and Communications Workers of America ("AFA/CWA") filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have briefed the matter, and on October 8, 2014, I heard oral argument on Defendants' motion. For the reasons set forth below, I recommend that the Defendants' motion be granted.

### I.    FACTUAL BACKGROUND

      Defendant AFA/CWA is a labor organization that represents among many other workers, approximately 55,000 flight attendants. *See* Amend. Compl. ¶¶ 2, 3. In 1996, Conner was hired as a Staff Attorney with the AFA. *Id.* ¶ 8. In July 2009, Conner was promoted to Associate General Counsel. *Id.* ¶ 8. She remained in that position until her termination on September 21, 2011. *Id.* In her role as Associate General Counsel, Conner supervised nine other attorneys in their handling of arbitrations, interfaced with union

Master Executive Councils, and managed her own caseload, among other duties. *Id.* ¶ 12. Connor was the only African American attorney at AFA. *Id.*

In September 2010, Conner filed suit against AFA/CWA alleging race discrimination and retaliation. *Id.* ¶ 13. After the filing of an amended complaint, the parties conducted discovery between May and July 2011. *Id.* ¶ 14. During discovery, AFA/CWA had an outside attorney review all of the emails that Conner had sent or received during her tenure at AFA/CWA. As the result of this review, AFA/CWA was apprised by the outside attorney, via a September 19, 2011 letter, that Conner allegedly committed violations of the Pennsylvania Rules of Professional Conduct. *Id.* ¶ 15. Conner contends that "[p]rior to the lawsuit, defendants had never performed a comprehensive review of emails of any staff member for any purpose." *Id.* ¶ 16. On September 21, 2011, AFA mailed a letter to Conner notifying her of her termination and "purport[ing] to state the basis for Conner's termination." *Id.* ¶17. Conner believes that the sole reason for her termination was not the ethics violations, but "the filing and prosecution of the [2010 discrimination] lawsuit." *Id.*

The parties engaged in settlement discussions on September 21, 2011. *Id.* ¶ 18. Conner alleges that at the time of these settlement discussions, "defendants distributed to a substantial number of their employees, most of whom did not report to Conner, an email announcing that Conner had been fired, implying misconduct by Conner and directing that no one speak to her." *Id.* ¶ 19. Conner then applied for and was granted unemployment compensation benefits. *Id.* ¶ 20. AFA/CWA told Plaintiff that they would not appeal the grant of benefits if she would sign a general release of all claims against AFA/CWA. *Id.* ¶ 21. Conner refused to sign the release and AFA/CWA appealed the

grant of benefits. *Id.* In January 2012, Conner participated in the referee's hearing on the appeal of the award of benefits. *Id.* ¶25.

In October 2011, Conner voluntarily dismissed with prejudice the federal discrimination claims in her lawsuit, and she agreed to proceed on the remaining state claims through arbitration. *Id.* ¶¶ 22, 23. On December 22, 2011, the arbitration panel hearing her state claims ruled against her. *Id.* ¶ 24. At some point in early 2012, a disciplinary complaint, based on the violations described in the September 19, 2011 letter by AFA/CWA's outside attorney, was filed with the Disciplinary Board of the Pennsylvania Supreme Court. *Id.* ¶ 26.

Conner alleges that prior to her case, AFA/CWA "had never investigated any employee for alleged ethical violations or misuse of the company email system, and had terminated employees only because of performance issues."[1] *Id.* ¶ 28. Conner also contends that at the time of her termination, she had no performance issues, had not used the email system in a manner different from any other employee, and had not been found by an "independent body" to have committed any ethical violations. *Id.*[2] In light of all of this, Conner contends that her "filing and prosecution" of the September 2010 discrimination lawsuit was the "sole reason" for her termination. *Id.*

## II.  LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. To survive a motion to dismiss, Conner must

---

[1] Interestingly, Conner's Amended Complaint does not allege that she did not violate ethics standards or misuse the company email system.

[2] At oral argument, Defense counsel clarified for the Court that the Disciplinary Board has stayed its investigation pending the outcome of all litigation. 10/8/14 Tr. at 22-23. To say that no disciplinary board has found ethics violations is technically correct, yet slightly misleading.

3

plead in the amended complaint "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).[3] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements will not suffice." *Id.* "The question is not whether the claimant 'will ultimately prevail . . . but whether [her] complaint [is] sufficient to cross the federal court's threshold.'" *Blocker v. Community Ed. Centers, Inc.,* 2014 WL 1348959 *2 (E.D. Pa. April 7, 2014) (Pratter, J.) (citing *Skinner v. Switzer,* ___ U.S. ___, 131 S. Ct. 1289, 1296 (2011)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), the Court of Appeals for the Third Circuit further explained:

> [A]fter *Ibqal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.

---

[3] AFA/CWA contends that I should consider three documents outside of the complaint: the September 19, 2011 letter describing alleged ethics violations by Conner, the September 21, 2011 email sent to AFA/CWA employees, and the September 21, 2011 termination letter, because they are referenced in the complaint. When faced with a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). The Third Circuit has held, however, that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id. See also, Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir.2004) (finding that the court may consider the "indisputably authentic documents related to [plaintiff's] grievances" in a § 1983 claim to determine whether plaintiff exhausted administrative remedies). I decline the invitation to review these documents, as I believe that it is clear from the face of the amended complaint that Conner has failed to state a claim upon which relief can be granted.

4

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Id.* (internal citations omitted).

Recently, the Supreme Court of the United States has altered the standard of causation in Title VII cases, compounding the challenge of surviving a motion to dismiss. In *University of Texas Southwestern Medical Center v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517 (2013), the Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation[.]" *Id.* at 2533. Thus, a Title VII plaintiff must demonstrate that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* Combining *Nassar's* more stringent causation standard, with *Twombly* and *Iqbal*'s heightened pleading standard, Conner's amended complaint must demonstrate on its face that it is plausible that Conner will be able to prove that "but for" AFA/CFA's retaliatory motive, Conner would not have been terminated. Pre-*Twombly/Iqbal*, to prevail on a motion to dismiss, a defendant needed to show that "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Fowler*, 578 F.3d at 210 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) (alterations in original). Post-*Twombly/Iqbal*, that standard has become more difficult. "To survive a motion to dismiss [today], a complaint must contain

5

sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).[4]

As discussed below, the facts pleaded in the amended complaint are insufficient to nudge Conner's claims "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. DISCUSSION

To prevail on a claim for retaliation pursuant to Title VII or the Pennsylvania Human Rights Act ("PHRA"), Conner must prove that: 1) she engaged in protected activity, 2) AFA/CWA took a materially adverse action against her, and (3) that there was a causal connection between her protected activity and the Defendant's action. *Blakney v. City of Philadelphia*, 559 Fed. Appx. 183, 185 n.4 (3d Cir. 2014) (not precedential). For purposes of this motion, AFA/CWA is willing to assume that Conner has successfully pleaded the first two elements of her case. Def.'s Mem. of Law in Supp. of Mtn. to Dismiss Amend. Compl. at 8. I agree. Accordingly, the issue is whether Conner has sufficiently pleaded that there is a "but for" causal link between her filing the 2010 lawsuit, and AFA/CWA terminating Conner in 2011.

---

[4] Studies show an increase in the number of cases dismissed on Rule 12(b)(6) grounds since *Iqbal. See e.g.* 17 MICH. J. RACE & L. 1, 43, "Beyond Common Sense: A Social Psychological Study of Iqbal's Effect on Claims of Race Discrimination" (Fall 2011) ("Scholars warned that Twombly and Iqbal would move the pivotal point at which courts screen cases earlier in time from summary judgment down to motion to dismiss, and that this move would be pronounced in employment discrimination cases. The motion to dismiss would, in effect, become the new summary judgment motion. The present research demonstrates that these concerns are well founded."); Raymond H. Brescia and Edward J. Ohanian, THE POLITICS OF PROCEDURE: AN EMPIRICAL ANALYSIS OF MOTION PRACTICE IN CIVIL RIGHTS LITIGATION UNDER THE NEW PLAUSIBILITY STANDARD at 355 (2014) (noting that following *Iqbal* the dismissal rate for all cases in the study (all employment and discrimination cases challenged on Rule 12(b)(6) grounds) increased to 71% from a pre-*Twombly* rate of 62%).

The Court of Appeals for the Third Circuit confronted an analogous issue in *Blakney*, 559 Fed. Appx. 183. That case involved a City employee alleging race discrimination and retaliation against the City. *See id.* at 184. As in this case, the Court of Appeals noted that the plaintiff in *Blakney* had sufficiently pleaded the first two elements of his retaliation claim. *Id.* at 185. With regard to the third prong, involving causation, the Third Circuit stated:

> We have previously held that "temporal proximity between the employee's protected activity and the alleged retaliatory action may satisfy the causal link element of a prima facie retaliation claim, at least where the timing is 'unusually suggestive of retaliatory motive.'" "[T]he mere fact that adverse employer action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."

*Id.* at 186. Temporal proximity is measured from the time a complaint is first filed. *Id.* Here Conner's complaint was filed in September 2010. Amend. Compl. ¶ 13. She was terminated one year later, in September 2011. *Id.* ¶ 17. The Court of Appeals has found a temporal proximity of two days to be unusually suggestive of causation. *See Jaliel v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). Conversely, a temporal proximity of more than ten days required additional evidence. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). Because the time between the alleged protected activity and the alleged retaliatory conduct was one year, causation cannot be alleged here by temporal proximity alone.[5]

Where temporal proximity alone is not sufficient to demonstrate causation, a court must look to certain "plus" factors. The Third Circuit has found such "plus"

---

[5] At argument on the Motion to Dismiss, Conner's attorney volunteered to supply me with cases supporting his proposition that a four to five month gap between the protected activity and alleged retaliatory conduct was sufficient to establish temporal proximity. 10/8/14 Tr. at 39. I have yet to receive any such citations from Plaintiff's counsel.

evidence to include a "'pattern of antagonism' subjecting plaintiff to a 'constant barrage of written and verbal warnings . . . [and] disciplinary actions, all of which occurred soon after plaintiff's initial complaints." *Blakney*, 599 Fed. Appx. at 186. There is nothing of that nature here. At oral argument, Conner's attorney conceded that the totality of Conner's allegations supporting "but for" causation are in paragraphs 17 and 28 of the Amended Complaint. 10/8/14 Tr. at 65-66. Those paragraphs allege that

> 17. On September 21, 2011, AFA mailed to Conner a letter terminating her employment with AFA and her representation of CWA. The letter purports to state the basis for Conner's termination. On information and belief and as alleged below, however, the sole reason for Conner's termination was the filing and prosecution of the lawsuit.
>
> . . . .
>
> 28. Prior to Conner, defendants had never investigated any employee for alleged ethical violations or misuse of the company email system, and had terminated employees only because of performance issues. At the time of her termination, Conner had no performance issues, had not used the company email system in a manner different from any other employee, and had not been found by an independent body to have committed any ethical violations while employed by defendants. In fact, all of the information that defendants allegedly relied on to terminate Conner was learned during the course of discovery in the lawsuit. Thus, Conner's filing and prosecution of the lawsuit was the sole reason for her termination.

Amend. Compl. ¶ 28. Additionally, counsel for Conner confirmed that there are no allegations of a hostile work environment, or a pattern of antagonism in this lawsuit. 10/8/14 Tr. at 41-42.

Construing the facts in paragraphs 17 and 28 in a light most favorable to plaintiff, and stripping them of conclusory statements, I can find no "plus" factors that would support a causal link between Conner's filing of her September 2010 lawsuit and her termination.

8

The only "but for" causation that Conner has pleaded is that but for the 2010 lawsuit, AFA/CWA would not have examined her emails. There is nothing unusual, let alone suggesting retaliation, about a defendant company reviewing emails in the context of litigation. Conner contends that she has met the "but for" causation standard of *Nassar* because *but for* her filing of the 2010 lawsuit, discovery would not have been conducted, and AFA/CWA would not have gone through the emails that revealed alleged ethics violations to AFA/CWA (in her words "the sole reason for" her termination). True enough, but this is not the "but for" connection the Supreme Court required in *Nassar*. There, the Court held that a plaintiff seeking to prove a retaliation claim must establish "but for" causation between the plaintiff's protected act and the defendants *motive* to fire her. *Id.* at 2532-33. The Court carefully distinguished between status based discrimination claims – which require that the plaintiff prove only that her status was one among several motivating factors – and retaliation claims, which require a plaintiff to prove that the protected act was *the* motivating factor, absent which no firing would have occurred. *See generally, id.* at 2528-31. Here, plaintiff asserts only a mechanical, not a motivational, link between the filing of her 2010 lawsuit and discovery of the emails that led to her dismissal. *See* Amend. Compl. ¶¶ 17, 28. That is not the "but for" causation the Supreme Court required in *Nassar*.

It is not plausible to infer retaliatory intent from a defendant business entity, in the context of discovery, reviewing emails on the work computer of the employee that was suing them.[6] That the review of those emails revealed alleged unethical behavior cannot fairly be characterized as a prohibited act, retaliatory or otherwise, committed by

---

[6] The point is made more vividly by plaintiff's concession that Conner volunteered her email for inspection during the 2010 lawsuit. 10/8/14 Tr. at 61.

9

AFA/CWA. Neither is it plausible to infer that once AFA/CWA was aware of the alleged unethical conduct, Conner would not have been fired but for discriminatory retaliation. Indeed, the strongest causal link supported by the alleged facts is that "but for" the alleged ethical violations evidenced within the examined emails, Conner would not have been terminated.

In *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364 (5th Cir. 1998), the Fifth Circuit Court of Appeals addressed a similar issue, albeit in a different procedural posture.[7] There, an in-house attorney disclosed informally to third parties (the Department of Energy – with whom DynMcDermott contracted) information regarding interoffice complaints of discrimination. *Id.* at 366. Such conduct was found to violate professional duties of loyalty and confidentiality that were owed to DynMcDermott by the plaintiff in her role of in-house counsel. *Id.* Based upon these ethics violations, the in-house attorney/plaintiff was terminated. *Id.* at 367. The question before the Fifth Circuit was whether the plaintiff's conduct was protected by Title VII. *Id.* at 366. The Fifth Circuit held that the plaintiff's conduct "constituted a breach of her duties of confidentiality and loyalty to DynMcDermott, that . . . was not protected activity as a matter of law," and that DynMcDermott therefore did not unlawfully retaliate against her when it terminated her employment because of that conduct. *Id.* at 369. The Fifth Circuit went on to conclude that "once the trust between attorney and client is breached in violation of professionally sanctioned duties, Title VII provides no shield from retaliation." *Id.* at 377.

---

[7] The case was before the Fifth Circuit to review the jury's verdict for sufficiency of the evidence. *Id.* a 369.

Conner put the ethics investigation at issue in her Amended Complaint, using it as an aggravating factor demonstrating discriminatory motive. *See* Amend. Compl. ¶¶ 15, 18, 26, 27. Indeed, the allegation of "plus" factors is critical to her case. *See Blackney*, 559 Fed. App'x at 186. Her claim of unlawful retaliation becomes plausible only if she can plead and prove that she did not, in fact, commit ethical violations. And that is the rub. Conner has not alleged either in her amended complaint, or her initial complaint, that she did not commit the ethical violations that are the stated reason for her termination. As pleaded, Conner's case will not cross the threshold of the federal court without such allegations. The Amended Complaint is carefully tailored to avoid pleading that that no ethics violation occurred. *See* Amed. Comp. ¶ 28 ("Prior to Conner, defendants had never investigated any employee for alleged ethical violations. . . ."; "At the time of her termination, Conner . . . had *not been found by any independent body to have committed any ethical violations* while employed by defendants.") (emphasis supplied).

The majority opinion in *Nassar* justified the need for a more stringent causation standard in retaliation cases as having "central importance to the fair and responsible allocation of resources in the judicial and litigation systems." *Nassar*, 133 S. Ct. at 2531. The Court recognized the exponential increase in the filing of retaliation claims over the last fifteen years, and expressed concern over the potential for the "filing of frivolous claims, which would siphon resources from efforts by employer, administrative agencies, and courts to combat workplace harassment[,]" were a lesser standard to be adopted. *Id.* This case implicates those concerns. *Iqbal* counsels that "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown[n]' – 'that the pleader is

11

entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). There needs to be more than a forlorn hope of a Perry Mason moment during depositions to satisfy *Iqbal*, *Twombly*, and *Nassar*. Here, after much thought, I cannot envision what, short of that Perry Mason moment, Conner could hope to glean from further discovery to support her claims.

IV. **RECOMMENDATION**

    I recommend that the amended complaint be dismissed without prejudice. Conner and her counsel should be given the opportunity to carefully consider their options, and decide whether they are able to file a Second Amended Complaint that properly pleads "but for" causation under *Nassar, Twombly,* and *Iqbal*.[8] This will be

---

[8] "Federal Rule of Civil Procedure 15(a) provides that 'leave [to amend] shall be freely given when justice so requires.' The Supreme Court has cautioned that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court, … outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of that discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.' Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (internal citations omitted).

    Here, it is arguably futile and prejudicial to the defendants to allow Conner to amend the complaint again. Nevertheless, at oral argument, counsel insisted that his client meant to plead that she had not committed any ethical violations. 10/8/14 Tr. at 46-47. I entertain serious doubts about the wisdom of Ms. Conner categorically denying the alleged ethical violations referred to in her complaint. I have even more doubt that she can allege facts that make it plausible that defendants were motivated to fire her for reasons other than the alleged ethical violations. Yet in the spirit of the Federal Rules, and under the guidance of *In re Burlington Coat Factory*, I think it best to permit Conner and her attorney a final chance to seriously evaluate the challenges of their case and make a reasoned decision about whether, consistent with Rule 11 of the Federal Rules of Civil Procedure, she can in good faith file a Second Amended Complaint. That final chance should last no more than 10 days, given the fact that this matter already has been thoroughly considered by all involved.

Conner's second attempt to plead her case in a manner consistent with *Nassar*, and I have provided very specific guidance about the challenges she faces. I also have expressed my sincere doubt that she can surmount those challenges.[9] I admonish that a second amended complaint should be filed within 10 days *only if* her case can be sufficiently pleaded without running afoul of Rule 11 of the Federal Rules of Civil Procedure.[10]

BY THE COURT:

*s/Richard A. Lloret*
RICHARD A. LLORET
U.S. Magistrate Judge

---

[9] Previously, Judge Schmehl granted the defendant's first motion to dismiss and directed plaintiff to file an amended complaint consistent with *Nassar*.

[10] In relevant part, Rule 11(b)(3) provides:

> (b) **Representations to the Court.** By presenting to the court a pleading. . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

13